# Illinois Official Reports

## Supreme Court

---

### *Bettis v. Marsaglia*, 2014 IL 117050

---

| | |
|---|---|
| Caption in Supreme Court: | CAROLYN BETTIS, Appellant, v. CHARLES M. MARSAGLIA *et al.*, Appellees. |
| Docket No. | 117050 |
| Filed | December 18, 2014 |
| Held (*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | After an electoral board sustained objections to plaintiff's petition for a referendum on school bonds and plaintiff sought judicial review, the Election Code provision calling for service on the board was satisfied, and there was no lack of subject matter jurisdiction in the circuit court, where every board member was served individually, even though no relief could later be granted once the election was over—issue addressed in spite of mootness. |
| Decision Under Review | Appeal from the Appellate Court for the Fourth District; heard in that court on appeal from the Circuit Court of Macoupin County, the Hon. Patrick J. Londrigan, Judge, presiding. |
| Judgment | Appellate court judgment reversed. Circuit court judgment reversed. |

Counsel on
Appeal

Vincent W. Moreth, of Carlinville, for appellant.

Robert W. Dodd, of Virden, for appellees Charles M. Marsaglia and Melissa O'Neal.

Robert A. Kohn and Steven M. Richart, of Hodges, Loizzi, Eisenhammer, Rodick & Kohn LLP, of Arlington Heights, for appellees Stephen Furman, Robyn Hays and Farley Cole.

Justices

JUSTICE THOMAS delivered the judgment of the court, with opinion.
Chief Justice Garman and Justices Freeman, Kilbride, Karmeier, and Burke concurred in the judgment and opinion.
Justice Theis dissented, with opinion.

## OPINION

¶ 1 Petitioner, Carolyn Bettis, filed a petition for judicial review of a decision of the Education Officers Electoral Board for North Mac Community Unit School District No. 34, Macoupin, Montgomery and Sangamon Counties (School District) pursuant to section 10-10.1(a) of the Election Code (Code) (10 ILCS 5/10-10.1(a) (West 2012)). Objectors, Charles M. Marsaglia and Melissa O'Neal, filed a motion to dismiss under section 2-619(a)(1) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(1) (West 2012)), arguing that the circuit court lacked subject matter jurisdiction because of petitioner's failure to comply with the procedural requirements of section 10-10.1(a). The circuit court of Macoupin County granted the motion to dismiss, and the appellate court affirmed (2013 IL App (4th) 130145). We allowed petitioner's petition for leave to appeal, and we now reverse.

¶ 2                                        BACKGROUND

¶ 3 On November 28, 2012, the School District adopted a resolution declaring its intent to issue working cash bonds in the amount of $2 million. Petitioner Carolyn Bettis filed a petition with the School District, seeking to submit the proposition of issuing the bonds to the voters. The petition specified that the proposition should be submitted to voters at the "election to be held on the 9th day of April, 2013." Charles M. Marsaglia and Melissa O'Neal filed objections to the petition on seven separate bases, including that the petition sheets were neither numbered nor securely bound, as required by section 28-3 of the Code (10 ILCS 5/28-3 (West 2012)). Following a hearing, the electoral board sustained the objections that the petitions were neither numbered nor bound. The objectors then withdrew their remaining objections.

¶ 4 Petitioner commenced an action for judicial review in the circuit court. The caption of the petition identified only objectors Marsaglia and O'Neal as opposing parties. Nevertheless, in

addition to serving a copy of the petition for judicial review on objectors, petitioner served, by certified mail, all three members of the electoral board, counsel for the electoral board, counsel for the objectors, and the School District secretary. On February 5, 2013, the defendants moved to dismiss the petition, arguing that the circuit court lacked jurisdiction because petitioner had failed to name and join as parties the Education Officers Electoral Board and its members. The circuit court granted the motion and dismissed the complaint.

¶ 5 The appellate court affirmed the dismissal. The court first noted that the appeal was moot because the election had already passed. However, the court found that the case qualified for review under the public interest exception to the mootness doctrine. 2013 IL App (4th) 130145, ¶¶ 10-11. The court agreed with petitioner that section 10-10.1(a) of the Code clearly spells out the jurisdictional requirements for judicial review of an electoral board decision, and that naming necessary parties is not one of these requirements. Thus, petitioner's failure to name the electoral board as a party in her petition did not require the court to dismiss the petition for lack of subject matter jurisdiction. *Id.* ¶ 18. Nevertheless, the appellate court agreed with defendants that, although petitioner served all three members of the electoral board, her failure to serve the electoral board as a separate legal entity required the dismissal of her petition. *Id.* ¶ 26. On this basis, the court upheld the circuit court's dismissal of the petition. *Id.* ¶ 27. We allowed petitioner's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. July 1, 2013).

¶ 6                                                    ANALYSIS

¶ 7 On appeal, petitioner argues that she complied with section 10-10.1(a)'s requirement that she serve the electoral board when she served every member of the board. She contends that duplicate service on the board as a separate legal entity is not necessary. By way of cross appeal, defendants argue that: (1) the court lacked subject matter jurisdiction because the petition failed to name the electoral board and did not contain any portion of the electoral board's written decision; and (2) the electoral board's decision must be affirmed because the complaint admits that the petition pages were not numbered and, according to two witnesses, were not bound.

¶ 8 Before proceeding to the merits of the appeal, we must address defendants' argument that we should dismiss the appeal as moot. A case on appeal becomes moot where the issues presented in the trial court no longer exist because events subsequent to the filing of the appeal render it impossible for the reviewing court to grant the complaining party effectual relief. *Jackson v. Board of Election Commissioners*, 2012 IL 111928, ¶ 28. The conclusion of an election cycle generally renders an election contest moot. *Id.* ¶ 43. There is no question that all of the issues raised in this appeal are moot. Petitioner's petition sought to submit a proposition to voters at the April 9, 2013, election, and that date has long since passed.

¶ 9 Nevertheless, one exception to the mootness doctrine allows a court to resolve an otherwise moot issue if the issue involves a substantial public interest. *Wisnasky-Bettorf v. Pierce*, 2012 IL 111253, ¶ 12. The criteria for invoking the public interest exception are that: (1) the question presented is of a public nature; (2) an authoritative resolution of the question is desirable for the purpose of guiding public officers; and (3) the question is likely to recur. *Jackson*, 2012 IL 111928, ¶ 44. When the public interest exception is invoked, the court must

examine each of the issues to see which ones qualify for resolution under that exception. See *In re Christopher K.*, 217 Ill. 2d 348, 360-63 (2005).

¶ 10 We hold that petitioner's issue and one of the two cross-appeal issues qualify for resolution under the public interest exception. One of defendants' cross-appeal issues is that the electoral board's decision may be affirmed on the basis that petitioner's petition pages were neither numbered nor securely bound. This is merely a case-specific, factual issue, for an election that has long since passed. Consequently, it does not meet the criteria of the public interest exception.

¶ 11 By contrast, the other two issues—whether a party must serve both the electoral board as an entity and all of the members of the board, and whether a party must name the electoral board and attach the board's decision—meet all three criteria of the public interest exception. As we noted in *Jackson*, questions relating to election law are inherently a matter of public concern. *Jackson*, 2012 IL 111928, ¶ 44. Moreover, the fact that these issues have already arisen in several cases and generated conflicting answers indicates that the issues will continue to arise until this court resolves the conflict.[1] For that reason, an authoritative decision from this court to guide the lower courts is desirable.

¶ 12 Petitioner argues that the circuit court erred in dismissing her petition for judicial review. According to petitioner, she complied with the statutory requirement that she serve the electoral board when she served every member of the board. For two reasons, our review of this issue is *de novo*. Review of the granting of a motion to dismiss for lack of subject matter jurisdiction is *de novo*. *People v. Philip Morris, Inc.*, 198 Ill. 2d 87, 94 (2001). Further, resolving this particular issue requires us to construe section 10-10.1(a), and issues of statutory construction are reviewed *de novo*. *Home Star Bank & Financial Services v. Emergency Care & Health Organization, Ltd.*, 2014 IL 115526, ¶ 22.

¶ 13 When construing a statute, this court's primary objective is to ascertain and give effect to the intent of the legislature. *Barragan v. Casco Design Corp.*, 216 Ill. 2d 435, 441 (2005). The best indication of legislative intent is the language used in the statute, which must be given its plain and ordinary meaning. *Gillespie Community Unit School District No. 7 v. Wight & Co.*, 2014 IL 115330, ¶ 31. It is improper for a court to depart from the plain statutory language by reading into the statute exceptions, limitations, or conditions that conflict with the clearly expressed legislative intent. *Metropolitan Life Insurance Co. v. Hamer*, 2013 IL 114234, ¶ 18. Words and phrases should not be viewed in isolation, but should be considered in light of other relevant provisions of the statute. *Midstate Siding & Window Co. v. Rogers*, 204 Ill. 2d 314, 320 (2003). Further, each word, clause and sentence of a statute must be given a reasonable construction, if possible, and should not be rendered superfluous. *Prazen v. Shoop*, 2013 IL 115035, ¶ 21. This court presumes that the legislature did not intend absurdity, inconvenience, or injustice. *Citizens Opposing Pollution v. ExxonMobil Coal U.S.A.*, 2012 IL 111286, ¶ 23.

---

[1]Defendants argue that petitioner's issue will not arise again because Public Act 98-115 abolished school district electoral boards. However, this change merely means that similar election challenges will be heard by the County Officers Electoral Board rather than the Education Officers Electoral Board. See Pub. Act 98-115, § 5 (eff. July 29, 2013) (amending 10 ILCS 5/10-9 (West 2012)). The disputed statutory language in section 10-10.1(a) was unchanged by the amendment, and thus the issues raised in this appeal will continue to arise until this court resolves them.

Where statutory language is clear and unambiguous, it will be given effect without resort to other aids of construction. *Kunkel v. Walton*, 179 Ill. 2d 519, 534 (1997). However, where the meaning of an enactment is unclear from the statutory language itself, the court may look beyond the language employed and consider the purpose behind the law and the evils the law was designed to remedy. *Id*. at 533-34.

¶ 14    Circuit courts may exercise jurisdiction over election cases only as provided by statute. *Pullen v. Mulligan*, 138 Ill. 2d 21, 32 (1990); Ill. Const. 1970, art. VI, § 9 ("Circuit Courts shall have such power to review administrative action as provided by law."). When a court exercises special statutory jurisdiction, that jurisdiction is limited to the language of the act conferring it, and the court has no powers from any other source. *Fredman Brothers Furniture Co. v. Department of Revenue*, 109 Ill. 2d 202, 210 (1985). In the exercise of special statutory jurisdiction, if the mode of procedure prescribed by statute is not strictly pursued, no jurisdiction is conferred on the circuit court. *Id*.

¶ 15    The procedure for obtaining judicial review of an electoral board decision is spelled out in section 10-10.1(a) of the Code:

> "(a) Except as otherwise provided in this Section, a candidate or objector aggrieved by the decision of an electoral board may secure judicial review of such decision in the circuit court of the county in which the hearing of the electoral board was held. The party seeking judicial review must file a petition with the clerk of the court and must serve a copy of the petition upon the electoral board and other parties to the proceeding by registered or certified mail within 5 days after service of the decision of the electoral board as provided in Section 10-10. The petition shall contain a brief statement of the reasons why the decision of the board should be reversed. The petitioner shall file proof of service with the clerk of the court. No answer to the petition need be filed, but the electoral board shall cause the record of proceedings before the electoral board to be filed with the clerk of the court on or before the date of the hearing on the petition or as ordered by the court." 10 ILCS 5/10-10.1(a) (West 2012).

¶ 16    Initially, we note that the issue before us is not one of strict compliance versus substantial compliance. There is no question that strict compliance with section 10-10.1(a) is required. See *Fredman*, 109 Ill. 2d at 210. Rather, the question is *how* a party strictly complies with section 10-10.1(a). The statute clearly requires that the electoral board be served, but the appellate court has split over what that means. In other words, if a petitioner serves every member of the board, has the petitioner served the board, or is duplicate service on the board as an entity also required?

¶ 17    The first case to address the issue on facts similar to those we have here was *Nelson v. Qualkinbush*, 389 Ill. App. 3d 79 (2009). In that case, the petitioner served every member of the electoral board, both at their home and at the city building. *Id*. at 87. The Appellate Court, First District, held that this was not sufficient to confer jurisdiction on the circuit court because there was "no doubt" that section 10-10.1(a) required service both on every member of the board *and* the board as a separate entity. As authority, the court relied on a line of cases that held that the court did not obtain jurisdiction when the petitioner failed to name and serve all of the board members. See *Russ v. Hoffman*, 288 Ill. App. 3d 281 (1997); *Bill v. Education Officers Electoral Board of Community Consolidated School District No. 181*, 299 Ill. App. 3d 548 (1998); *Johnson v. Theis*, 282 Ill. App. 3d 966 (1996). The court acknowledged the

petitioner's concern that electoral boards are simply temporary entities with no regular meeting place or address. However, the court found that this was not a concern because the Code specified where the electoral board was to hold its meetings. That case involved the Municipal Officers Electoral Board, which is required to hold its meetings where the governing body of the municipality meets. Thus, the court held that the board should have been served at the Calumet City building. *Nelson*, 389 Ill. App. 3d at 87-88.

¶ 18 The First District reiterated this view in *Rivera v. City of Chicago Electoral Board*, 2011 IL App (1st) 110283, ¶ 24, when it again stated that there was "no doubt" that section 10-10.1(a) required service on the board itself but also on the individual board members who participated in the decision. The jurisdictional problems in that case, however, were that the petitioner had failed to show that he served the petition by "registered or certified mail," and that he attempted service on the board and its members by serving their attorney. The court explained that section 10-10.1(a) clearly requires service by registered or certified mail, and the courts had already held that service on a party's attorney is not sufficient to serve the party. *Id*. ¶ 33.

¶ 19 The Fifth District took a contrary view in *Langenstein v. Kassimali*, 2012 IL App (5th) 120343. In that case, the petition for judicial review was served on each individual board member, but not on the board as a separate legal entity. The court held that this was sufficient to comply with section 10-10.1(a):

"In this case, the Board is a temporary entity convened for a particular purpose and then dissolved once that purpose has been realized. Therefore, in order for the appellants to serve the Board with their petitions for review, they would be required to serve the Jackson County clerk. The appellants served the petitions upon the individual members of the Board, which included the county clerk (in his individual capacity as a board member). Because the appellants served the petitions for review on the members of the county election board designated under section 10-9, we find that the requirements of section 10-10.1 have been followed. Accordingly, we conclude that the circuit court had subject matter jurisdiction to consider the appellants' petitions for review." *Id*. ¶ 7.

The court specifically declined to follow *Nelson* and *Rivera*, and it found support for its decision in *Zack v. Ott*, 381 Ill. App. 3d 545, 550-51 (2008), in which the Second District stated that, "[o]ur reading of section 10-10.1 reveals that the General Assembly intended for procedural due process to be accomplished by an objector serving the electoral board members with the petition by registered or certified mail." *Langenstein*, 2012 IL App (5th) 120343, ¶ 10.[2]

¶ 20 The Third District would follow *Langenstein* in *Carlasare v. Will County Officers Electoral Board*, 2012 IL App (3d) 120699. In that case, the objectors contended that the courts lacked jurisdiction over the petition for review because the county clerk was not served separately as the representative of the electoral board. The court cited *Langenstein* approvingly

---

[2]It should be noted, however, that the issue in *Zack* was whether section 10-10.1 requires a petitioner to *name* the members of the electoral board in the petition. The petitioner in that case served the members of the electoral board, but the opinion does not say one way or the other whether the board was served as a separate legal entity.

for the proposition that duplicate service on the county clerk is not necessary to comply with section 10-10.1(a). *Id*. ¶ 17.

¶ 21 The Fourth District then issued its decision in the present case. The court acknowledged the split in the appellate districts, and decided to follow the First District's position. According to the Fourth District, section 10-10.1(a) "clearly" requires service on the electoral board as a separate entity. 2013 IL App (4th) 130145, ¶ 26.

¶ 22 Finally, the First District revisited the issue in *Solomon v. Ramsey*, 2014 IL App (1st) 140339. In that case, the petitioner served the electoral board as an entity, but not the individual members. For the first time, the First District seemed to question whether its previous position had been the correct one. The court discussed *Langenstein* approvingly, but found that it would not change the result in the case before it because the opposite facts were present: the board was served, but not the individual members. For the first time, however, the First District acknowledged that the plain language of the statute was confusing. *Id*. ¶ 17. This was a change from previous First District opinions that had held that there was "no doubt" that service on the board and all of its members was required. See *Nelson*, 389 Ill. App. 3d at 87. Ultimately, because of *stare decisis* concerns, the court decided to adhere to the First District position. However, the court called on the legislature to address the statute and spell out "once and for all who must be named, who must be served and whose service to the clerk must be made." *Solomon*, 2014 IL App (1st) 140339, ¶¶ 17, 18.

¶ 23 We do not believe that the plain language of the statute resolves the issue. Rather, we agree with *Solomon* that the statutory language is unclear, and we are not surprised that courts have split over its meaning. The statute is ambiguous and requires construction.

¶ 24 The precise issue before us is whether petitioner complied with section 10-10.1(a)'s mandate that she "serve a copy of the petition upon the electoral board" (10 ILCS 5/10-10.1(a) (West 2012)) when she served a copy of the petition on all three members of the electoral board. The two constructions of section 10-10.1(a) that have been proposed by the appellate court are both reasonable. One could certainly read the statute and conclude, as did *Nelson* and its progeny, that service on the board and each member of the board is required. However, we believe that someone could just as easily reach the same conclusion as the Third and Fifth Districts: that service on every member of the board necessarily accomplishes service on the board.

¶ 25 For several reasons, we believe that the Third and Fifth Districts have proposed the better interpretation. First, we note our agreement with *Langenstein* and *Carlasare* that, in cases such as this, service on the Education Officers Electoral Board as an entity when the petitioner has already served every member of the board would be entirely duplicative. *Langenstein* and *Carlasare* pointed out that service on the board as a separate entity would mean serving the same person with process twice. No one who had not already been served with a copy of the petition would receive notice when the board was served as a separate legal entity. Thus, we would be hesitant to endorse this redundant requirement unless the statute clearly required it, and we do not believe that it does. Our overriding purpose in construing a statute is to ascertain the legislature's intent, and the obvious intent behind section 10-10.1(a) is to ensure that all necessary parties receive notice that a petition for judicial review has been filed. That purpose was accomplished fully in this case, and neither the statute nor the public policy informing the statute requires more.

¶ 26    Moreover, when the statute is read in conjunction with section 10-9, we find that the better interpretation is that a petitioner has served the board when he or she has served every member of the board. Section 10-10.1(a) requires service upon the electoral board, and the board has a statutorily defined membership. Section 10-9 defines who comprises the various electoral boards. For purposes of this case, the relevant board is the Education Officers Electoral Board:

> "5. The education officers electoral board to hear and pass upon objections to the nominations of candidates for offices in school or community college districts shall be composed of the presiding officer of the school or community college district board, who shall be the chairman, the secretary of the school or community college district board and the eligible elected school or community college board member who has the longest term of continuous service as a board member." 10 ILCS 5/10-9(5) (West 2012).

¶ 27    Plugging this definition into section 10-10.1(a) shows that service is required upon the presiding officer of the school district board (who acts as chairman), the secretary of the school district board, and the longest continuous serving member of the board. And that is precisely who petitioner served. She served the three persons whom the statute defines as making up the board. As petitioner states in her brief, she served everyone she could possibly think of to serve.

¶ 28    Finally, this court has noted that access to a place on the ballot is a substantial right not lightly to be denied. *Welch v. Johnson*, 147 Ill. 2d 40, 56 (1992). Defendants, citing *In re Petition of Voters*, 234 Ill. App. 3d 294, 298 (1992), contend that ballot access for referenda is different than for individual candidates, and that the courts have not allowed ballot access concerns to excuse partial compliance with statutory requirements. Be that as it may, substantial compliance is not the issue before us. Rather, we are faced with an ambiguous provision of the Code, and the question before us is which of two reasonable statutory constructions to adopt. We see no reason why the policy favoring ballot access should not lead us to adopt the interpretation that simplifies procedure. Moreover, this interpretation will apply both to individual candidates seeking a place on the ballot and to those seeking to place referenda on the ballot. For all of the above reasons, we conclude that petitioner served the board when she served every member of the board.

¶ 29    Next, defendants argue by way of cross-appeal that the dismissal should be affirmed on the basis that the petition for judicial review did not name the electoral board or its members and did not have attached thereto a copy of the electoral board's decision. The appellate court has split over whether naming parties is required. The courts in *Russ*, *Bill*, and *Johnson*[3] all held that naming the board and its members was a necessary prerequisite to the circuit court's exercise of subject matter jurisdiction over the petition. *Zack* rejected this view, holding that the requirements for the court to exercise subject matter jurisdiction were clearly set forth in section 10-10.1 and that, if the legislature intended to require the naming of parties, it would have included that requirement in the statute. *Zack*, 381 Ill. App. 3d at 550-51.

---

[3]*Johnson* was a Second District decision, and the Second District later held in *Zack* that *Johnson* should not be read as endorsing a naming requirement. *Zack*, 381 Ill. App. 3d at 551-52. Nevertheless, when listing the reasons that the *Johnson* petitioners had failed to comply with section 10-10.1, the *Johnson* court stated that the board was "never served *or named* as a party to the action." (Emphasis added.) *Johnson*, 282 Ill. App. 3d at 971.

¶ 30    In the present case, the Fourth District agreed with *Zack*, holding that the only jurisdictional requirements are those listed in the statute. 2013 IL App (4th) 130145, ¶ 18. The court also noted that other decisions such as *Russ*, *Bill*, and *Allord v. Municipal Officers Electoral Board*, 288 Ill. App. 3d 897 (1997), were distinguishable in that they involved lack of naming *and service* of necessary parties. 2013 IL App (4th) 130145, ¶ 17. The court also noted the defendants' reliance on the Administrative Review Law, which requires naming of parties in the caption of the petition, but held that this requirement could not be read into the Code. Although proceedings under the Code are in the nature of administrative review, the Administrative Review Law applies only where it is adopted by express reference, and there is no express adoption of the Administrative Review Law for electoral board decisions. *Id.* ¶¶ 19-20. Moreover, the Administrative Review Law's naming requirement is expressly provided for in section 3-107 of that statute (see 735 ILCS 5/3-107 (West 2012)), and the legislature provided no similar requirement in section 10-10.1(a) of the Code. Thus, cases such as *Associated General Contractors of Illinois v. Chun*, 245 Ill. App. 3d 750, 753-54 (1993), that have found a naming requirement to be a jurisdictional prerequisite under the Administrative Review Law have done so because that requirement is expressly set forth in the statute. 2013 IL App (4th) 130145, ¶ 20.

¶ 31    We agree with the analyses of the appellate court in this case and in *Zack*. As we explained in *Fredman*, when a court exercises special statutory jurisdiction, that jurisdiction is conferred only when the mode of procedure set forth in the statute is strictly pursued. *Fredman*, 109 Ill. 2d at 210. As the appellate court has noted numerous times, section 10-10.1(a) sets forth four explicit jurisdictional prerequisites:

> "[The petitioner] must (1) file his challenging petition with the clerk of the court within five days after the Board's service of its decision; (2) serve copies of the petition on the Board and the other parties to the proceedings by registered or certified mail within five days after the Board's service of its decision; (3) state in that petition why the Board's decision should be reversed; and (4) file proof of service with the clerk of the court." *Rivera*, 2011 IL App (1st) 110283, ¶ 22; see also 2013 IL App (4th) 130145, ¶ 15; *Nelson*, 389 Ill. App. 3d at 86; *Zack*, 381 Ill. App. 3d at 550; *Allord*, 288 Ill. App. 3d at 901.

¶ 32    If the legislature intends any other prerequisites for the exercise of jurisdiction over petitions for review of electoral board decisions, it is up to the legislature to set them forth. The courts may not add to or subtract from the requirements listed in the statute. Petitioner complied with the requirements of section 10-10.1(a), and we reject defendants' argument that petitioner was required to comply with additional requirements not set forth by the legislature. The statute does not require the naming of parties, and it does not require that a copy of the electoral board's decision be attached to the petition. For all of the above reasons, the circuit court erred in dismissing petitioner's petition for judicial review.

¶ 33    In the prayer for relief in her brief, petitioner asks this court to reverse the decisions of the appellate and circuit courts and to remand the case to the circuit court with directions to accept her petition for judicial review. Although we agree with petitioner that the lower courts should be reversed, we have also determined that a remand under these circumstances would not be appropriate. The only question that would be in front of the court on remand would be whether the electoral board erred in sustaining the objections to petitioner's petitions. As we explained

above, however, this issue has been mooted by the passage of the only election specified in the petition. It would be a waste of judicial resources to remand this case to the circuit court to determine a moot issue. See, *e.g.*, *Girot v. Keith*, 212 Ill. 2d 372, 382-83 (2004) (after reviewing moot case under public interest exception and finding that a due process violation occurred in front of the electoral board, court finds no purpose would be served by a remand to determine if petitions had been securely bound); *People v. Roberson*, 212 Ill. 2d 430, 440-41 (2004) (under public interest exception review, court holds that defendant was improperly denied sentencing credits, but simply reverses outright because defendant had already completed his prison term and period of mandatory supervised release); *In re E.G*, 133 Ill. 2d 98, 112-13 (1989) (after reviewing case under public interest exception, court holds that "nothing would be gained" by remanding for a determination if E.G. was a mature minor because E.G. was no longer a minor). Accordingly, we will simply reverse the appellate court's judgment outright.

¶ 34        Appellate court judgment reversed.

¶ 35        Circuit court judgment reversed.


¶ 36        JUSTICE THEIS, dissenting:

¶ 37        I disagree with the majority's decision to reverse the lower courts. In my view, the circuit court lacked subject matter jurisdiction because petitioner Carolyn Bettis failed to comply with section 10-10.1(a) of the Election Code. 10 ILCS 5/10-10.1(a) (West 2012).

¶ 38        The majority's analysis begins in the right place, stating that this court's primary objective in construing a statute is to ascertain and effectuate the legislature's intent as expressed in the plain language of the statute, but the majority fails to sketch the statutory landscape in sufficient detail. Section 10-9 of the Code describes the composition of various electoral boards. The relevant board in this case is the Education Officers Electoral Board for North Mac Community Unit School District No. 34. Education officers electoral boards are empowered "to hear and pass upon objections to the nominations of candidates for offices in school or community college districts." 10 ILCS 5/10-9(5) (West 2012). This case does not involve an objection to a petition for a candidate's nomination, but an objection to a petition for the submission of a public question to referendum under article 28 of the Code. See 10 ILCS 5/28-1 *et seq.* (West 2012). Section 28-4 of the Code states that sections 10-8 through 10-10.1 apply to public question petitions. 10 ILCS 5/28-4 (West 2012). That leads us to section 10-10.1(a), which provides, "The party seeking judicial review [of an electoral board decision] must file a petition with the clerk of the court and *must serve a copy of the petition upon the electoral board and other parties to the proceeding \*\*\*.*" (Emphasis added.) 10 ILCS 5/10-10.1(a) (West 2012).

¶ 39        The question before us is simply whether, under section 10-10.1(a), Bettis was required to serve the board itself in order to confer jurisdiction upon the circuit court. The statute refers to the electoral board, and not to electoral board members. Presumably, the legislature knows the difference between an entity and the individuals who conduct its proceedings. This court cannot depart from the plain language of the statute to substitute one for the other by adding a word—"members"—that the legislature chose not to use. See *Home Star Bank & Financial Services v. Emergency Care & Health Organization, Ltd.*, 2014 IL 115526, ¶ 24 ("It is

improper for a court to depart from the plain statutory language by reading into the statute exceptions, limitations, or conditions that conflict with the clearly expressed legislative intent."); *Nordine v. Illinois Power Co.*, 32 Ill. 2d 421, 428 (1965) ("plain and unambiguous provisions of a statute do not need construction"). Thus, the statute offers a clear, affirmative answer to the question before us: Bettis was required to serve the electoral board itself. The majority even seems to acknowledge that answer when it states, "The statute clearly requires that the electoral board be served ***." *Supra* ¶ 16; accord *Nelson v. Qualkinbush*, 389 Ill. App. 3d 79, 87 (2009) ("There can be no doubt that section 10-10.1 requires service on the Board" as "the entity making the decision" on the objection.); *Rivera v. City of Chicago Electoral Board*, 2011 IL App (1st) 110283, ¶ 24.

¶ 40    Rather than accepting that unmistakable answer, however, the majority poses another question. According to the majority, the relevant question is not whether a petitioner must strictly comply with the statute's requirement to serve the electoral board, but rather how a petitioner accomplishes that. *Supra* ¶ 16. Under the plain language of the statute, there is only one acceptable answer to this "how" inquiry. A petitioner strictly complies with the statute by serving the board itself, not its members. Bettis did something else. She served the three electoral board members at what appear to be their home addresses.

¶ 41    The majority offers three soft policy reasons to excuse Bettis' failure to comply with the terms of section 10-10.1(a). First, the majority states that service on the board itself would be "entirely duplicative," and notes its hesitance "to endorse this redundant requirement unless the statute clearly required it." *Supra* ¶ 25. In fact, the statute does require a petitioner to serve the board, and it does so quite clearly. The majority directs its argument at a version of section 10-10.1(a) that does not exist, which masks its attempt to rewrite the version that does exist. Such a holding damages our well-established rules of statutory construction and ultimately undercuts our authority to say what laws mean.

¶ 42    Second, the majority states that section 10-9 of the Code, which outlines who comprises various electoral boards, informs section 10-10.1(a). Section 10-9 discusses who the board members are, not who must be served. *Supra* ¶ 26. Section 10-10.1(a) discusses who must be served, and, as noted above, it refers to the electoral board and not to board members. If we should look to any other provision of the Code, I would suggest that section 10-10, which sets the location for board hearings, would be more instructive. Under section 10-10, the electoral board here may hold hearings at the county courthouse or where the governing body of the school district holds its regular meetings. 10 ILCS 5/10-10 (West 2012). Thus, Bettis should have served the board at either of those places, rather than the individual board members at home. See *Nelson*, 389 Ill. App. 3d at 88 ("Under section 10-10 of the Code, the Municipal Officers Electoral Board is required to meet where the governing body of the municipality holds its meetings. Accordingly, the Board conducts its business at the City of Calumet City building and the Board may be served there by filing with the city clerk."). The board, through its members, may have received notice of the petition, but notice is a different issue than jurisdiction. Jurisdiction under the Code rests upon strict compliance with its provisions (see *Pullen v. Mulligan*, 138 Ill. 2d 21, 32 (1990)), which never occurred in this case.

¶ 43    Third, the majority cites ballot access as a reason for adopting a simplified procedure. While I agree with the majority that ballot access is an important right with constitutional underpinnings (see *Jackson v. Board of Election Commissioners*, 2012 IL 111928, ¶ 84

(Freeman, J., concurring in part and dissenting in part, joined by Burke, J.)), I fail to see how allowing a petitioner to serve three individuals at their home addresses, instead of one entity at the location of its meetings, simplifies procedure. Indeed, identifying those individuals under section 10-9 and finding their home addresses before serving them significantly complicates matters. An electoral board may be "a temporary entity convened for a particular purpose" (*Langenstein v. Kassimali*, 2012 IL App (5th) 120343, ¶ 7), but it is not ephemeral. The board must remain intact through the period in which proceedings for judicial review must be commenced (see *Nelson*, 389 Ill. App. 3d at 88), and, where, as here, a petition seeking such review has been filed, until a court has held a hearing and made a decision promptly thereafter (see 10 ILCS 5/10-10.1(a) (West 2012)).

¶ 44    Although section 10-10.1(a) is unambiguous, the General Assembly should recognize that a majority of this court has now declared that the statute is, in some measure, less than clear. Certainly, the legislature may amend the statute if today's decision is not consistent with its intent. See *Solomon v. Ramsey*, 2014 IL App (1st) 140339, ¶ 17 ("[T]he legislature would provide a valuable service if it, and not the courts, spelled out once and for all who must be named, who must be served and whose service to the clerk must be made.").

¶ 45    Respectfully, I dissent.